UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

**04-10616 JLT**

MAGISTRATE JUDGE Collins

CLEAR CHANNEL OUTDOOR, INC. and
LAMAR CENTRAL OUTDOOR, INC.,

        Plaintiffs,

v.

PAUL PIETAL, in his official capacity as Chairman of
the Outdoor Advertising Board;
WILLIAM T. HAYWARD, JR., in his official capacity
as Member of the Outdoor Advertising Board;
DAVID VEATOR, in his official capacity as the designee
of the Honorable John Cogliano, Commissioner of the
Massachusetts Highway Department and Member of the
Outdoor Advertising Board

        Defendants.

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._____
DATE_____

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF FIRST AND FOURTEENTH AMENDMENTS TO
CONSTITUTION OF THE UNITED STATES; THE CIVIL RIGHTS ACT
OF 1871, 42 U.S.C. § 1983; ARTICLE 16 OF THE MASSACHUSETTS DECLARATION
OF RIGHTS, AS AMENDED BY ARTICLE 77 OF THE AMENDMENTS TO THE
MASSACHUSETTS CONSTITUTION; AND THE LAWS OF MASSACHUSETTS

Plaintiffs Clear Channel Outdoor, Inc. and Lamar Central Outdoor, Inc., by and through

their undersigned attorneys, allege as follows:

**JURISDICTION**

1.     This is an action in which the Plaintiffs, Clear Channel Outdoor, Inc. ("Clear

Channel") and Lamar Central Outdoor, Inc. ("Lamar"), are seeking declaratory and injunctive

relief against the Defendants in their official capacities. This Court has jurisdiction over this

action as it arises under the First and Fourteenth Amendments to the United States Constitution,

and under Title 28 United States Code Sections 1331 and 1343(a)(3) and (4). Subject matter jurisdiction is also conferred by Title 42 United States Code Sections 1983 and 1988. This Court has supplemental jurisdiction over claims brought under state law pursuant to Title 28 United States Code Section 1367 and under its pendant jurisdiction. This Court has subject matter jurisdiction to enter a declaratory judgment and injunctive relief under Title 28 United States Code Sections 2201 and 2202. Attorneys fees are provided by Title 42 United States Code Section 1998.

## VENUE

2. Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because Defendants reside in this District and events giving rise to Plaintiffs' causes occurred in this District.

## FACTS

3. Each and every act by Defendants, as alleged herein, has been initiated under color of statutes, ordinances, regulations, customs and usage of the Commonwealth of Massachusetts.

4. Clear Channel and Lamar are lawfully engaged in the erection and maintenance of outdoor advertising signs, also commonly referred to as "billboards," a medium of communication that disseminates noncommercial and commercial messages within the Commonwealth of Massachusetts which are speech protected by the Constitutions of the United States and of the Commonwealth of Massachusetts.

## PARTIES

5. Plaintiff Clear Channel Outdoor, Inc. is a Delaware corporation authorized to do business in Massachusetts and maintains business offices at 89 Maple Street, Stoneham, Massachusetts 02180. Clear Channel is engaged in the business of outdoor advertising in the

Commonwealth of Massachusetts and owns and maintains billboards, signs and other devices that are subject to regulation by the Outdoor Advertising Board (hereinafter the "OAB").

6.  Plaintiff Lamar Central Outdoor, Inc. is a Delaware corporation authorized to do business in Massachusetts and maintains business offices at 32 Midland Street, Windsor, Connecticut 06095.    Lamar is engaged in the business of outdoor advertising in the Commonwealth of Massachusetts and owns and maintains billboards, signs and other devices that are subject to regulation by the OAB.

7.  The Outdoor Advertising Board is an agency of the Commonwealth of Massachusetts and derives its authority from two provisions of the General Laws of Massachusetts:

A.  Chapter 93, Sections 29-33 of the General Laws of Massachusetts establish the authority of the OAB to promulgate rules and regulations ". . . for the proper control and restriction of billboards, signs and other advertising devices . . . on public ways or on private property within view of any highway, public park or reservation." Further, Chapter 93 provides that the OAB "…may require said billboard, signs or other devices to be licensed by the board by the issuance of permits in accordance therewith and with this section and may prescribe permit fees to be fixed with regards to the cost of administering this section . . . ."

B.  Chapter 93D of the General Laws of Massachusetts establishes restrictions governing the erection or maintenance of certain specific billboards located within six hundred and sixty feet of the nearest edge of the right-of-way of interstate and federal-aid primary highways within the Commonwealth of Massachusetts in furtherance of, and in order to bring Massachusetts in compliance with, the federal Highway Beautification Act, 23 U.S.C. § 131, and with a federal-state agreement between Commonwealth of Massachusetts and the United States Department of Transportation that further implements the federal Highway Beautification Act.  Section 3 of

Chapter 93D provides that: " Under the procedures set forth in Chapter ninety-three, the board is authorized to issue permits for the erection and maintenance of such signs, displays and devices . . . ."

8.  Defendant Paul Pietal is a natural person who is a citizen of Massachusetts who resides in the District of Massachusetts, is the Chairman of the OAB and who was and is acting under color of state law all times relevant to this Complaint, and together with the other members of the OAB, establishes the polices and regulations of the OAB, including but not limited to OAB license and permit fees, and controls the actions of the OAB.  Defendant Paul Pietal is sued in his official capacity only.

9.  Defendant William G. Hayward, Jr. is a natural person who is a citizen of Massachusetts who resided in the District of Massachusetts and is a member of the OAB and who was and is acting under color of state law all times relevant to this Complaint, and together with the other members of the OAB, establishes the polices and regulations of the OAB, including but not limited to OAB license and permit fees, and controls the actions of the OAB. Defendant William G. Hayward, Jr. is sued in his official capacity only.

10.  Defendant David Veator is a natural person who is a citizen of Massachusetts who resides in the District of Massachusetts and is a member of the OAB and who was and is acting under color of state law all times relevant to this Complaint, and together with the other members of the OAB, establishes the polices and regulations of the OAB, including but not limited to OAB license and permit fees, and controls the actions of the OAB.  Defendant David Veator is sued in his official capacity only.

11.  Defendant Mary L. Burns is a natural person who resides in the District of Massachusetts and is the Executive Director and Chief Operations Officer of the OAB and

4

Associate Commissioner of the Massachusetts Highway Department, Outdoor Advertising Division, and was and is acting under color of state law at all times relevant to this Complaint and supervises implementation and enforcement of the policies and regulations of the OAB, including but not limited to collection of OAB license and permit fees. Defendant Mary L. Byrnes is sued in her official capacity only.

## GENERAL ALLEGATIONS

12. Pursuant to the provisions of Chapter 93 and Chapter 93D, the OAB has promulgated rules and regulations that require the owners of billboards (*i.e.*, signs which do not advertise or indicate (i) either the person occupying the premises in question or the business transacted thereon or (ii) the property itself or any part thereof for sale or let) in Massachusetts to secure two types of authorizations from the Board.

A.  First, pursuant to 711 CMR 3.02, the OAB requires that a person engaging in the outdoor advertising business must secure a license from the OAB and pay a license fee before commencing business, and that a licensee must thereafter continue to renew that license annually and pay an annual license fee for as long as the licensee wishes to remain in the outdoor advertising business. Pursuant to 711 CMR 3.021a : "No person shall engage in the business of outdoor advertising in this Commonwealth by means of a sign without first obtaining a license therefore from the Board."

B.  Second, pursuant to 711 CMR 3.02-3.03 the OAB requires that, in order to construct an outdoor advertising sign, a licensee must first file an application with the OAB and pay a nonrefundable permit fee. Once an individual sign permit has been issued, the licensee must renew that permit annually and again pay a permit fee in the same amount that is required for initial construction authorization. Pursuant to 711 CMR 3.02, "No person shall erect or maintain

any sign unless a permit for such sign has been granted pursuant to 711 CMR 3.00 - 711CMR 302a." Likewise, a licensee must file an application with the OAB for authority to transfer any permit to a third party, or to amend a permit, or to secure a temporary sign permit. In each of these instances as well, the licensee's application must be accompanied by payment of a nonrefundable permit fee.

13.     On or about May 22, 2003, the OAB adopted an emergency regulation that established a new schedule of OAB license and permit fees (the "OAB Emergency Regulation").

14.     The OAB Emergency Regulation imposed one hundred percent (100%) increases in the fees charged by the OAB for outdoor advertising licenses. For example, the fee for an initial outdoor advertising license application was increased by the OAB Emergency Regulation from $1,000 to $2,000. The annual license renewal fee by licensees holding 0-200 signs permits was increased by the OAB Emergency Regulation from $1,000 to $2,000, and the amount charged licensees holding more then 200 sign permits was increased by the OAB Emergency Regulation from $1,500 to $3,000.

15.     The OAB Emergency Regulation also included provisions that doubled the fees charged by the OAB for individual sign permits. Thus, the permit fee for each sign of up to 100 square feet in surface area was increased by the OAB Emergency Regulation from $60 to $120. The permit fee for each sign between 101 and 672 square feet in surface area was increased by the OAB Emergency Regulation from $100 to $200 and the permit fee for each sign larger than 672 square feet was increased by the OAB Emergency Regulation from $160 to $320. The permit fee for each tri-vision sign with alternating sign faces was increased by the OAB Emergency Regulation from $250 to $500 and new permit fees were established by the OAB

Emergency Regulation for each bus shelter ($120), each sign transfer ($50) and each permit amendment ($50).

16.  On  August 22, 2003, the OAB conducted a public hearing regarding license and permit fees.  A meeting of the OAB was then convened and the Emergency Regulations were adopted as amendments to the OAB Rules and Regulations (the "Permanent Fee Schedule").

17.  Pursuant to the OAB's Emergency Regulation and Permanent Fee Schedule, Plaintiffs Clear Channel and Lamar each are now required to pay an annual license fee of $3,000 instead of the $1,500 annual license fee in effect prior to 2003.

18.  Plaintiff Clear Channel holds 2,429 OAB sign permits.  Pursuant to the OAB Permanent Fee Schedule, Clear Channel is now required to pay to the OAB annual sign permit renewal fees of $499,440.  Under the fee schedule in effect prior to 2003, Clear Channel would have been required to pay sign permit fees of $249,720.

19.  Plaintiff Lamar holds 466 OAB sign permits.  Pursuant to the OAB Permanent Fee Schedule, Lamar is now required to pay to the OAB annual sign permit renewal fees of $80,720. Under the fee schedule in effect prior to 2003, Lamar would have been required to pay sign permit fees of $40,360.

20.  On information and belief, in fiscal year 2002, the OAB collected a total of approximately $750,000 in license fees and sign permit fees from all persons engaged in outdoor advertising in Massachusetts.  On information and belief, pursuant to the OAB Permanent Fee Schedule, in 2004 the OAB will collect total license fees and sign permit fees of approximately $1.5 million.

21.  On information and belief, the total license fees and sign permit fees imposed by the OAB Permanent Fee Schedule are not reasonably related to recoupment of the actual and

reasonable cost to the Commonwealth of the activities of the OAB in administering its statutory responsibilities under Chapter 93 and Chapter 93D, and in fact will far exceed such costs.

22.    Plaintiffs Clear Channel and Lamar are in doubt as to the authority of the OAB to impose license fees and permit fees in the amounts that it has established in the Permanent Fee Schedule and to the constitutionality of the amounts of said fees imposed by the Permanent Fee Schedule and are in fear that the OAB will revoke their outdoor advertising licenses and permits in the event that they nonetheless fail to pay these illegal license fees and permit fees which are imposed by the OAB Permanent Fee Schedule.

23.    There is a bona fide, actual and justiciable controversy that has arisen whether the OAB has the authority under Massachusetts law to impose license fees and sign permit fees in the amounts prescribed by the Permanent Fee Schedule which are in excess of the amount reasonably related to recoupment of the costs of administering and carrying out the OAB's responsibilities.

24.    There is a bona fide, actual and justiciable controversy that has arisen whether, even if the OAB has the authority under Massachusetts state law to impose the fees set forth in the Permanent Fee Schedule, the imposition of said license fees and sign permit fees by the OAB violates the First and Fourteenth Amendments of the United States Constitution by imposing license and sign permit fees that exceed the reasonable costs of administering the OAB permit and licensing system and constitute an unconstitutional charge on the exercise of protected speech.

25.    There is an actual, practical and present need for declaratory and injunctive relief in order to insure that there is a clear determination of law that will resolve these disputes in a uniform manner and avert the potential imposition of improper and unconstitutional charges on

the Plaintiffs or any other persons engaged in the outdoor advertising business in the Commonwealth, and to clarify the matter for the Commonwealth which is relying on the availability of excess revenues from OAB license fees and sign permit fees to offset budget deficits in the general fund.

## FIRST CLAIM FOR RELIEF

**(Fees imposed by the Permanent Fee Schedule Violate the First and Fourteenth Amendments to the Constitution of the United States Because They Exceed the Costs of Administering the OAB's License and Permit System)**

26. Plaintiffs reallege the allegations of Paragraphs 1 through 25 as though fully set forth herein.

27. The fees imposed by the Permanent Fee Schedule are not revenue neutral and in fact said fees imposed constitute a charge for the privilege of exercising rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

28. The fees imposed by the Permanent Fee Schedule therefore are unconstitutionally in excess of the amount reasonably necessary to recoup the actual costs of administering and carrying out the OAB's responsibilities and are an unconstitutional charge on protected speech in violation of the First and Fourteenth Amendments to the Constitution of the United States.

## SECOND CLAIM FOR RELIEF

**(Fees imposed by the Permanent Fee Schedule Violate Article 16 of the Massachusetts Declaration of Rights, as Amended by Article 77 of the Amendments to the Massachusetts Constitution Because They Exceed the Costs of Administering the OAB's License and Permit System)**

29. Plaintiffs reallege the allegations of Paragraphs 1 through 25 as though fully set forth herein.

30. The fees imposed by the Permanent Fee Schedule are not revenue neutral and in fact said fees imposed constitute a charge for the privilege of exercising rights guaranteed by Article

9

16 of the Massachusetts Declaration of Rights, as amended by Article 77 of the Massachusetts

Constitution.

31. The fees imposed by the Permanent Fee Schedule therefore are unconstitutionally in

excess of the amount reasonably necessary to recoup the costs of administering and carrying out

the OAB's responsibilities and are an unconstitutional charge on protected speech in violation of

Article 16 of the Massachusetts Declaration of Rights, as amended by Article 77 of the

Massachusetts Constitution.

## THIRD CLAIM FOR RELIEF

### (Imposition of Unlawful Excessive License and Permit Fees
### In Violation MGL of Chapter 93, Section 29)

32. Plaintiffs reallege the allegations in paragraphs 1 through 25 as though fully set forth

herein.

33. MGL Chapter 93, Section 29 provides that the OAB may require permits for

individual billboards, signs and other devices, but specifically limits the Board's authority in that

regard to " . . . prescribe permit fees, to be fixed with regards to the cost of administering this

section . . . . "

34. On information and belief, the total revenues that will be collected by the OAB

pursuant to the Permanent Fee Schedule from persons engaged in outdoor advertising or seeking

to engage in outdoor advertising for license fees and permit fees  exceed the actual cost incurred

by the OAB in administering the statutory responsibilities set forth in Chapter 93 Section 29.

35. Accordingly, the license and permit fees imposed by the OAB Permanent Fee

Schedule are not lawful regulatory fees, have not been fixed with regards to the costs of

administering MGL Chapter 93, Section 29,  and are null and void.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief against Defendants as follows:

1. For a declaration of the rights, obligations, and other legal relations among Plaintiffs and Defendants, namely that the Permanent Fee Schedule imposes license and permit fees in excess of the amount reasonably related to recoupment of the costs of administering and enforcing the OAB's responsibilities and constitutes a charge on protected speech in violation of the First and Fourteenth Amendments to the Constitution of the United States and for a permanent injunction prohibiting Defendants from imposing license and permit fees in excess of reasonable costs of administering the OAB's license and permit system, including without limitation the fees imposed by the Permanent Fee Schedule.

2. For a declaration of the rights, obligations, and other legal relations among Plaintiffs and Defendants, namely that the Permanent Fee Schedule imposes license and permit fees in excess of the amount reasonably related to recoupment of the costs of administering and carrying out the OAB's responsibilities and constitutes a charge on protected speech in violation of Article 16 of the Massachusetts Declaration of Rights, as amended by Article 77 of the Massachusetts Constitution and for a permanent injunction prohibiting Defendants from imposing license and permit fees in excess of reasonable costs of administering the OAB's license and permit system, including without limitation the fees imposed by the Permanent Fee Schedule.

3. For a declaration of the rights obligations and other legal relations among Plaintiffs and Defendants – namely that the OAB was without lawful authority when it imposed the Permanent Fee Schedule on billboards signs and other devices located within the Commonwealth

11

of Massachusetts and a permanent injunction prohibiting Defendants from imposing or collecting the fees in the Permanent Fee Schedule.

    4. For costs and attorneys fees incurred in the prosecutions of this action, pursuant to, with limitation 42 U.S.C. § 1988.

    5. For such additional and further relief, in law and equity as may be deemed just and appropriate.

Respectfully submitted,

Clear Channel Outdoor, Inc. and
Lamar Central Outdoor, Inc., Plaintiffs

By their attorneys,

_____

George A. Berman, BBO# 040200
Marjunette deMagistris, BBO# 648133
POSTERNAK BLANKSTEIN & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 973-6100

Date: 3/29/04

Of Counsel:

_____

Eric M. Rubin, Esq.
Walter E. Diercks, Esq.
RUBIN, WINSTON, DIERCKS, HARRIS &
    COOKE, LLP
Sixth Floor
1155 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 861-0870

Date: 3/29/04