UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE.

2004 JUN -2 P 12: 25

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION NO.: 1:04-CV-10616 JLT

---

CLEAR CHANNEL OUTDOOR, INC. and
LAMAR CENTRAL OUTDOOR, INC.,

Plaintiffs,

v.

PAUL PIETAL, in his official capacity as Chairman of
the Outdoor Advertising Board;
WILLIAM T. HAYWARD, JR., in his official capacity
as Member of the Outdoor Advertising Board; and
DAVID VEATOR, in his official capacity as Member
of the Outdoor Advertising Board.

Defendants.

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### STATEMENT OF THE CASE

**I.     Procedural Context In Which This Motion Arises**

Plaintiffs Clear Channel Outdoor Advertising Inc., ("Clear Channel") and Lamar Central

Outdoor Advertising, ("Lamar") have filed a Complaint with this Court seeking declaratory and

injunctive relief pursuant to 42 U.S.C. § 1983, et seq. against the Defendants, in their official

capacities, challenging the validity of a one hundred percent (100%) increase of individual

outdoor advertising sign permit fees that has been imposed by the Massachusetts Outdoor

Advertising Board (the "OAB").  Payment of these increased fees total at least $1.5 million,

including payments by the Plaintiffs in this case of over $530,000, which must be remitted in full

on June 30, 2004.

The Complaint filed by the Plaintiffs challenges the fees being imposed on them by the OAB, on the grounds that the permit fees imposed by the OAB Permanent Fee Schedule violate the First and Fourteenth Amendments to the Constitution of the United States because they exceed the amounts reasonably necessary to recoup the actual costs incurred by the OAB in its administration of its regulatory and enforcement responsibilities. In their Complaint, Plaintiffs do not contest the authority of the OAB to impose license and permit fees upon outdoor advertising. In fact, Plaintiffs have never failed in the past to pay all such fees and although the Complaint challenges the entire OAB Permanent Fee Schedule, the injunction proposed by Plaintiffs would only restrain the collection of additional amounts adopted in the OAB Permanent Fee Schedule. The Motion for a Preliminary Injunction that accompanies this Memorandum requests that this Court preserve that status quo by issuing an interlocutory order enjoining Defendants from enforcing the one hundred percent (100%) increase in fees implemented by OAB Permanent Fee Schedule and from penalizing Plaintiffs for non-payment of such increased fees, during the pendency of this litigation.

The OAB Permanent Fee Schedule fails under the microscope of strict scrutiny that the First Amendment focuses on regulations that impose regulatory fees on the exercise of protected speech. However, Plaintiffs cannot wait for those issues to be adjudicated in the normal course. Although the issues in this case are financial, Plaintiffs cannot simply pay their fees under protest and later secure an order from this Court requiring disgorgement and refunds of illegally imposed fees when the case is resolved in their favor. That is because under the law, even a temporary deprivation of First Amendment rights is considered irreparable injury per se even where a refunds remedy may be available. However, there is no monetary remedy at all available in this case. Such relief is barred by the Eleventh Amendment, as well as under 42

U.S.C. §1983 because Defendants are sued in their official capacity as officers of the Commonwealth of Massachusetts. Under these circumstances, the resulting irreparable harm to Plaintiffs far outweighs any speculative inconvenience that the Commonwealth and its officials might experience from a delay in the collection of the one hundred percent increase in permit fees, implemented in the new OAB Permanent Fee Schedule.

Plaintiffs are filing this Motion for injunctive relief now because they will be in violation of Chapter 93 of the Massachusetts General Law in the event that they do not pay the full fees by June 30, 2004.

## II.    Factual Background

The basic facts alleged in the Compliant are as follows. The Plaintiffs, Clear Channel Outdoor, Inc. and Lamar Central Outdoor, Inc., are engaged in the outdoor advertising business in the Commonwealth of Massachusetts and own and operate hundreds of billboards in the Commonwealth. The Outdoor Advertising Board is an agency of the Commonwealth of Massachusetts that regulates billboards in Massachusetts. The OAB imposes an annual fee on each billboard in the state and a license fee on any person engaging in outdoor advertising. Defendant Pietal is the Chairman of the OAB and Defendants Hayward and Veator are the Board's other two members. Defendants Pietal, Hayward and Veator establish the policies and regulations of the OAB, including OAB license and permit fees, and control the actions of the OAB.

On or about February 1, 2003, Governor Mitt Romney proposed increases in a number of state fees in order to raise additional revenue for the State. Among those fee increase proposals was a proposal to double the license and fees charged for billboard advertising. On or about May 22, 2003 the OAB, without a hearing or establishing any record to provide a basis for its action,

promulgated an emergency regulation, which doubled all OAB, license and permit fees.[1] Subsequently, on or about August 22, 2003 the OAB held a public hearing on adoption of the emergency regulations as a permanent fee schedule (the "Permanent Fee Schedule"). However, the OAB never placed in the record any studies or other information to substantiate the need to double license and permit fees.

Since the adoption of these fees by the OAB in August 2003, Plaintiffs have been urging officials of the Commonwealth to reconsider this regulation for the reasons that are now alleged in the Complaint. On January 29, 2004, the OAB extended the initial deadline for paying these fees from January 31, 2004 until February 29, 2004. On February 28, 2004, the deadline for paying the fees was again extended until March 31, 2004, with the OAB stating that it required additional time to consider the issue. See Exhibit 2, Declaration of Drew Hoffman.

On March 30, 2004 Plaintiffs filed their Complaint with the Court. However, in order to avert Plaintiffs' filing of this Motion, and to permit the OAB yet additional time, the Parties entered into an agreement whereby the Plaintiffs would file their applications for license renewals, together with payment in full of applicable license fees, which totaled $3,000 for each Plaintiff. See Exhibit 4, Letter from William Hicks, Esq., Counsel to the OAB. In addition, the OAB and the Plaintiffs agreed that the OAB would accept Plaintiffs' annual applications for renewal of each of their outdoor advertising sign structures upon payment of an amount equal to the permit fees that they had paid prior to the one hundred per cent increase in those fees. The date for payment of the second installment was delayed until June 30, 2004, to allow the OAB yet more time to consider this matter further. Finally, the Parties specifically agreed that this

---

[1] The OAB's authority to prescribe fees is set forth in MGL Chapter 93, Section 29, which only authorizes the OAB to ". . . prescribe fees, to be fixed with regards to the costs of administering this section . . . ." Thus, the OAB only has the statutory authority to impose regulatory fees. Cumberland Farms, Inc. v. Tax Assessor, 116 F.3d 691 (1st Cir. 1997).

interim agreement did not constitute a waiver of any claims or defenses they might have, including the causes of action set forth in the Complaint in this case. See Exhibit 2, Declaration of Drew Hoffman.

On May 12, 2004 Defendant's Counsel once again informed Plaintiffs that the OAB has decided to take this matter "...under advisement and authorize a formal response at its next meeting." Unfortunately, a date for that meeting has not been scheduled, and given the OAB's history of equivocation, there is no reasonable prospect that this matter will be resolved before June 30, 2004.

## III.    Legal Standard for Issuance of a Preliminary Injunction

The First Circuit imposes a well-known four-part test for determining when a preliminary injunction is warranted. Under that test, the moving party must demonstrate, (1) a likelihood of success on the merits; (2) that the plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that the plaintiff's injury outweighs any harm which would be inflicted on the defendant in granting the relief; and (4) that the public interest will not be adversely affected by granting of the injunction. Campbell Soup Co. v. Giles, 47 F3d. 467 (1st Cir. 1995). All four elements favor the Plaintiffs in this litigation.

## IV.    There is a Substantial Likelihood That Plaintiffs Will Succeed On The Merits of Their Complaint

### A.    The First Amendment Prohibits Fees on Speech Which Exceed Reasonable Regulatory Expenses

The Plaintiffs do not dispute the OAB's authority to impose fees that support the expense actually incurred in the reasonable exercise of the agency's licensing and permit functions. However, in this instance, the OAB has apparently lost sight of the fact that its regulation of outdoor advertising is subject to the First and Fourteenth Amendments. "The outdoor sign or

symbol is a venerable medium for expressing political, social and commercial ideas." Metromedia, Inc. v. San Diego, 453 U.S. 490, 501(1981).  See also, Ackerley Communications of Massachusetts, Inc. v. City of Somerville, 878 F.2d 513 (1st Cir. 1989); Ackerley Communications of Massachusetts, Inc. v. Cambridge, 88 F.3d 33 (1st Cir. 1996).  Therefore, the First Amendment imposes severe constraints on the OAB's exercise of its authority to set permit and license fees.

It is a settled matter of constitutional law that a regulatory fee imposed on protected expressive activity crosses a constitutional demarcation line when the amount of the charge exceeds reasonable expenses that are actually incurred by the government in the exercise of its regulatory responsibilities.  Thus, in Murdock v. Pennsylvania, 319 U.S. 105 (1943), the Supreme Court established the general principle that a regulatory fee must be a "…nominal fee imposed as a regulatory measure to defray the expenses of the policing activities in question." Striking down a municipal license fee imposed on religious solicitors, the Court was emphatic that a regulatory fee may not be a "… flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment." Id. at 114. See also, Cox v. New Hampshire, 312 U.S. 539 (1941).

The federal courts have given broad application to Murdock.  Thus, in AAK, Inc. v. City of Woonsocket, 830 F. Supp. 99 (D.R.I. 1993), the United States District Court for the District of Rhode Island granted summary judgment in striking down a municipal adult cabaret license fee that exceeded the cost of administration.

> A government authority may impose a fee that is  incidental to a valid
> licensing or permitting scheme.  … In this case the City failed to meet its

> burden of demonstrating that the $750 per quarter license fee is reasonably
> related to the costs of administering its adult cabaret ordinance. Id. at 105.

Ibid. 830 F. Supp. At 105.

Likewise, the U.S. Court of Appeals for the Seventh Circuit has applied Murdock to invalidate a

municipal permit fee required for the display of a "for sale" sign because that fee exceeded

expenses incurred in administration enforcement of real estate sign regulations. "The Supreme

Court has consistently invalidated fees that do not bear a rational relationship to services

involved in providing permits or licenses for communicative activities (citations omitted.)"

South-Suburban Housing Center v. Greater v. Greater South, et al., 935 F.2d 868, 894 (7th Cir,

1991). The U.S. District Court for the District of Connecticut in Moffett v. Killian, 360 F. Supp.

228 (D. Conn. 1973), invalidated a $35 lobbying regulation fee that produced revenues in excess

of actual administrative costs. And last year, the Eleventh Circuit applied Murdock and Cox to

invalidate a municipal license fee imposed on wide range of businesses that fell within the

definition of "Adult Entertainment and Services."

> Under Murdock and Cox, when core First Amendment freedoms are made subject
> to a licensing scheme, only revenue-neutral fees may be imposed, to that
> government is not charging for the privilege of exercising a constitutional right.

Fly Fish, Inc. v. City of Cocoa Beach, 337 F.3d 1301, 1314 (11th Cir. 2003).[2] See also, Bayside

Enterprises, Inc. v. Dale Carson, et al., 450 F. Supp. 696 (M.D. Fla. 1978).

Therefore, the federal courts in this and other Circuits have made it clear that the

government may not profit by imposing a license or permit fee on the exercise of First

---

[2] The Massachusetts legislature clearly recognized this constitutional limit on permit fees for
signs when it enacted MGL Chapter 93, Section 29, which provides that the OAB may require
permits for individual billboards, signs and other devices, but specifically limited the OAB's
authority in that regard to ". . . prescribe fees, to be fixed with regards to the costs of
administering this section . . . ."

Amendment rights, and is prohibited from raising revenue from fees imposed on speech under the guise of defraying its administrative costs.

**B.    The Burden Is On the Commonwealth To Satisfy The Strict Scrutiny Standard Applicable To Its Regulatory Fees.**

The fact that the OAB Permanent Fee Schedule falls upon expressive activity also carries other serious ramifications for the Defendants in this litigation. First, the burden of proof rests firmly on the Defendants to demonstrate that the OAB Permanent Fee Schedule is necessary to recoup the actual costs of administering the licensing and permitting program.

> The licensing authority bears the burden of showing that the fees imposed as a regulatory measure are necessary to cover reasonable costs of the licensing system and that the fees were used for no other purposes than to meet those cost.

AAK v. Woonsocket, 830 F. Supp. at 105. See also Flying Fish, Inc., 337 F.3d at 1314; Sentinel Communications Co. v. Watts, 936 F.2d 1189, at 1206 n. 17. In addition, the Defendants' proof will be subject to strict judicial scrutiny in evaluating whether it is a reasonable charge. AAK v. Woonsocket, 830 F. Supp. at 104; See also, Bayside Enterprises Inc. v. Carson, 450 F. Supp. at 704, where the U.S. District Court for the Middle District of Florida invalidated a fee where the governments cost projections exceeded amounts that could reasonably be needed and Wendling v. City of Duluth, 495 F.Supp. 1380 (D. Minn. 1980), striking down a license fee where the government was unable to demonstrate that fee was related to administration of the licensing statute itself.

**V.    The Facts Indicate That The OAB Permanent Fee Schedule Unconstitutionally Exceeds Actual and Reasonable Regulatory Costs.**

The facts available at this stage of this litigation on the public record indicate that it is highly unlikely that the Defendants will be able to sustain their constitutional burden of demonstrating that the OAB Permanent Fee Schedule goes no further than is constitutionally

permissible. Indeed, the available evidence indicates that the OAB simply doubled all of its fees because it believed that the Governor had directed it to do so in order to generate net revenue for the state, without regard to the OAB's actual regulatory expenses.

On or about February 1, 2003, Governor Romney proposed a plan to implement a wide variety of fees on the use of state facilities and services. One of those proposals was to double the license and permit fees charged for billboard advertising. The Governor carefully noted, however, that this was strictly a proposal, and that most fee increases would require public hearings. However, the OAB apparently mistook the Governor's carefully worded statement as a directive.

On or about May 22, 2003, the OAB adopted the fee schedule as an Emergency Regulation, which doubled sign permit fees. Then, after Public Notice, on or about August 22, 2003, the OAB convened a public hearing to receive testimony on the adoption of the Fee Schedule as a permanent regulation. Many of those testifying at this hearing protested the fee increase. See Exhibit 1, Declaration of Stephen Hebert. However, the OAB itself never placed any cost studies, any records or summaries of its historical expenses, or even its 2003 or 2004 budgets, on the record to substantiate the need for a permanent one hundred percent (100%) increase of license and permit fee revenues. Instead, immediately following public testimony opposing the new fees, the OAB voted to adopt the Emergency Regulation's fee schedule by unanimous vote as the Permanent Fee Schedule. 711 CMR 3.00-3.17.

Because of severely restrictive federal, state and local regulations, the OAB regulates a largely static and unchanging inventory of outdoor advertising signs in Massachusetts. Recently, the United States Court of Appeals for the First Circuit had an opportunity to survey the state of outdoor advertising in the Commonwealth of Massachusetts and made the following findings:

9

> The highly regulated nature of the billboard market in the Greater Boston area makes it impossible, or at least nearly impossible, to obtain a permit to build a new billboard... Many of the existing billboards in Boston are "grandfathered," meaning that they are in locations in which a new billboard would be prohibited by either federal or state law or by local zoning ordinances. . . Although there are currently non-grandfathered billboards in locations which would theoretically allow the construction of a replacement billboard, as a practical matter it is extremely difficult, if not impossible, to obtain approval for a replacement billboard from both the OAB and local zoning authorities. . . The effect of these regulations is to make the number of billboards in the Greater Boston area either static or diminishing . . . .

RSA Media, Inc. v. AK Media Group, Inc., 260 F.3d 10, 12 (1st Cir. 2001).

The Circuit Court's finding reflects the general situation throughout the Commonwealth of Massachusetts. See Exhibit 2, Declaration of Drew Hoffman. In fact, Clear Channel, which owns the largest number of OAB permitted outdoor advertising signs in Massachusetts, did not add a single additional outdoor advertising structure to its inventory in Massachusetts during all of 2003 and 90 percent of all Clear Channel sign structures in Massachusetts are more then ten years old. See Exhibit 2, Declaration of Drew Hoffman. Plaintiff Lamar also did not construct any new structures in 2003. See Exhibit 1, Declaration of Stephen Hebert. As a result of these circumstances, the OAB's licensing and permit renewal activities are largely confined to a yearly paperwork reconfirmation of the existing permit inventory and the cashing of checks for the payment of permit fees. The sporadic applications for permits to erect new outdoor advertising signs that are filed from time to time are carefully investigated by the OAB to assure that the proposed structure conforms to the Board's rigorous location criteria. But those filings occur infrequently. Once a sign structure is erected, there is little for the OAB to do with respect to that sign structure, other than to process the annual renewal paperwork.

The limited and essentially repetitive nature of the OAB's activity is crystallized in the Board's permit application, which states, "As you are aware, your permits will be renewed

automatically unless a substantial change in the surrounding environment has occurred." See Exhibit 3, OAB Renewal Application. In lieu of investigation the renewal applicant is then required to provide a sworn affidavit under penalty of perjury.

Given these facts, it is not plausible that this cumulative and repetitive annual renewal process involves any great expense, or that those expenses have suddenly increased by one hundred percent. This is further confirmed by the OAB's budget documentation. Through counsel, on February 12, 2003, Plaintiffs directed a public records request to the OAB, pursuant to Mass. Gen. L. c66 §10, requesting the OAB's budgets for fiscal years 2002 and 2003, including all expenses that may be a portion of the budget of a larger division or department, if applicable. See Exhibit 5, Public Records Request. In reply, Plaintiffs received copies of an internal Massachusetts Department of Transportation e-mail exchange that included an official record for the OAB that indicated an "obligation ceiling" of $2,000. The DOT's reply also included an internal Highway Department notation: "This is our budget for the Outdoor Advertising Board." See Exhibit 6, OAB Budget Document.

These undisputed facts -- the OAB's unsubstantiated and precipitous adoption of the Permanent Fee Schedule, the First Circuit's factual determinations regarding the static character of outdoor advertising in Massachusetts, the OAB's own acknowledgement of the "automatic" nature of the annual permit and license renewal process, and the OAB's reply to Plaintiffs' public records request -- all underscore the strong likelihood that the Defendants will not be able to sustain their burden of showing that the $1.5 million in fees imposed by the OAB Permanent Fee Schedule are necessary to recoup the costs of administering the OAB licensing and permitting program. Plaintiffs' likelihood of success is made more certain by the fact that the Defendants will have to shoulder a constitutional burden that requires an accounting of actual

11

costs and a demonstration that those costs are reasonable, all under the glare of strict scrutiny by this Court.

**VI.    Injunctive Relief Is Essential In Order to Prevent Irreparable Injury To the Plaintiffs**

   **A.      First Amendment Rights are Entitled to Special Protection and the Temporary Loss of Freedom of Expression Constitutes Irreparable Injury per se.**

A preliminary injunction is warranted to preserve the status quo between the Parties and to forestall irreparable injury, pending a final determination of the merits of the underlying action.   The First Circuit has held that the heart of the four part test for a preliminary injunction is whether the harm caused the plaintiff without an injunction, in light of the plaintiff's likelihood of success on the merits, outweighs the harm the injunction will cause the defendant. Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (1st Cir. 1987).  The question of irreparable harm to the plaintiff takes on added urgency when the plaintiff is alleging a violation of its First Amendment rights.

The Supreme Court has been emphatic that First Amendment rights are unique and must be accorded special protection to ensure that they are not compromised during the pendency of litigation.  When speech is impaired, even for a minimal period of time, the injury becomes irreparable as a per se matter.  Accordingly, in Elrod v. Burns, 427 U.S. 347, 373-374 (1976), the Supreme Court examined whether the District Court's denial of a preliminary injunction for lack of a showing of irreparable injury was appropriate when the movants had alleged that they were threatened with dismissal from their jobs unless they pledged support for the Democratic Party. Finding that "[t] he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," Id. 427 U.S. at 373-374, the Supreme Court held that the District Court abused its discretion in refusing to issue a preliminary injunction.

The United States Court of Appeals for the First Circuit, and indeed this Court, have consistently applied the Supreme Court's holding in Elrod. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Feliciano v. Gaztambide, 836 F.2d 1, 4 (1st Cir. 1987). See also, In the Matter of Providence Journal Company, 820 F.2d 1342 (1st Cir. 1986); Westfield High School L.I.F.E. Club v. City of Westfield, 249 F. Supp.2d 98 (D.Ma. 2003); Demarest v. Athol/Orange Community Television, Inc., 188 F. Supp.2d 82 (D.Ma. 2002); Wagner v. City of Holyoke, 100 F. Supp.2d 78 (D. Ma. 2000); South Boston Allied War Veterans Council v. City of Boston, 875 F. Supp. 891 (D. Ma. 1995).

Finally, a number of federal courts in this Circuit and elsewhere have made it clear that the issuance of a preliminary injunction is particularly important because of the long-standing recognition that monetary damages, even if available, are inadequate to cure even temporary deprivations of First Amendment rights which would occur during the pendency of litigation. Stanton v. Brunswick School Dept., 577 F. Supp. 1560, 1567-68 (D. Me. 1984); Libin v. Town of Greenwich, 625 F. Supp. 393, 395 (D. Conn, 1985); McDonald v. Chicago Park Dist., 132 F.3d 355, 358 (7th Cir. 1997). "A violation of First Amendment rights cannot be effectively compensated by an award of monetary damages at the end of litigation." Touchstone v. McDermott, 234 F.3d 1133, 1159 n. 4 (11th Cir. 2000). However, in this case even the possibility of an end-of-case damage award does not exist.

**B.**    **The Civil Rights Act and the Eleventh Amendment Do Not Permit This Court to Order Refunds Of Unconstitutional Fees.**

**1.**    **Refunds May Not Be Ordered Against State Officials Under 42 U.S.C. § 1983**

13

In order to vindicate and protect their First Amendment and Fourteenth Amendment rights, Plaintiffs are seeking injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 (the "Civil Rights Act"). However, Plaintiffs have no damage remedy under the Civil Right Act to recoup any unconstitutional fees paid during the pendency of this litigation. The Court of Appeals for the First Circuit has made it clear that the unavailability of an end-of-case financial award in an action brought before this Court under the Civil Rights Act alone establishes irreparable injury that warrants the issuance of a preliminary injunction.

In Rosario-Urdaz v. Hernandez, 350 F.2d 219 (1st Cir. 2003), the plaintiff brought an action in the U.S. District Court for the District of Puerto Rico under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments arising from her termination by the Department of Labor and Human Resources because of her political affiliations. However, the District Court denied the plaintiff's motion for a preliminary injunction, seeking reinstatement during the pendency of the litigation, finding that there was no irreparable injury because end of case monetary damages would be available. The United States Court of Appeals for the First Circuit reversed that determination.

> The plaintiff is correct that money damages are unavailable against the Commonwealth in this action, but not necessarily for Eleventh Amendment reasons. The shortest, most direct route to that result evolves out of the fact that neither a State nor its officers are "persons" within the meaning of the 42 U.S.C. 1983. . . This holding squarely forecloses any possibility that plaintiff will obtain an award of damages. . . .

Rosario-Urdaz, 350 F.3d at 221.

Without a preliminary injunction, Ms. Rosario-Urdaz would have suffered irreparable economic damage. Without injunctive relief in the instant case, Plaintiffs not only will be made to forfeit hundreds of thousands of dollars unconstitutionally taken from them, they will also

suffer the permanent deprivation of their Constitutional rights through the Commonwealth's retention of those monies.

**2.      The Eleventh Amendment Prevents This Court from Ordering Defendants to Refund Unconstitutional Fees In this Case.**

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend any suit in law or equity, commenced or prosecuted against one of the United States, by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Amendment XI to the Constitution of the United States.

The Eleventh Amendment does not prevent a federal court from granting injunctive relief to prevent enforcement of an unconstitutional state regulation. Thus, in its seminal opinion in Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court held that the Eleventh Amendment permitted a federal court to enjoin the Attorney General of Minnesota from enforcing a statute that violated the Fourteenth Amendment. However, the Supreme Court has made it equally clear that the Eleventh Amendment does not authorize the exercise of federal judicial power to award financial relief against public funds. Edelman v. Jordan, 415 U.S. 651 (1974); Milliken v. Bradley, 433 U.S. 267 (1977); Frew v. Hawkins, 540 U.S.___, 124 S.Ct. 899 (2004).

> The funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself than it does the prospective injunctive relief awarded in Ex Parte Young.

Edelman, 451 U.S. at 665.

**3.      A Preliminary Injunction Is Essential To Forestall Irreparable Injury In this Case.**

The preclusive effect of the Civil Right Act and the Eleventh Amendment on this Court's authority to order a retroactive refund in this case crystallizes the immediate necessity for a

preliminary injunction in order to prevent the inevitable irreparable financial and constitutional injury to Plaintiffs.

Plaintiffs will be confronted with two equally untenable choices unless this Court issues a preliminary injunction. Plaintiffs could submit to the OAB on June 30, 2004 and pay the Board's obviously inflated permit fees, thus enduring an immediate violation of their First Amendment rights, but protecting their signs from the adverse consequences of not paying. Or, in the alternative, Plaintiffs could refuse to pay the increased fees, which would render their businesses and their signs in immediate violation of state license and permit regulations. This latter course would subject their sign structures to enforcement actions by the OAB, or even by those municipalities where these structures are located, requiring removal as an unlawful use. 711 CMR 3.02. As the First Circuit emphasized in its decision in RSA v. Ackerley, once removed, these sign structures cannot be reconstructed due to their "grandfathered" nonconforming status whichever way Plaintiffs turn they conform immediate irreparable injury unless this Court grants their Motion for Preliminary Injunction.

## VII. Massachusetts Would Not Suffer Any Irreparable Injury From The Issuance of A Preliminary Injunction

The Commonwealth of Massachusetts will not sustain any irreparable injury whatsoever by the issuance of the narrowly drawn preliminary injunction that is being sought in Plaintiffs' Motion. Plaintiffs' Motion only seeks an injunction of the 100% increases implemented by the Permanent Fee Schedule, without prejudice to the general allegations in their Complaint, which challenge the entire Permanent Fee Schedule. The resulting shortfall of approximately $750,000 -- the difference between the OAB's previous fees and the Permanent Fee Schedule -- is not going to result in any palpable injury to the Commonwealth of Massachusetts. The preliminary injunction ensures that the OAB will not be starved for funds and if the OAB should prove that

16

the Permanent Fee Schedule is in fact constitutional, the Board has it completely within its power to collect every penny that would be withheld under the proposed preliminary injunction.

## VIII. The Public Interest Would Not Be Adversely Affected by This Preliminary Injunction.

Plaintiffs' Motion for a Preliminary Injunction is narrowly structured and would only restrain the implementation of the most obviously unconstitutional portion of the OAB Permanent Fee Schedule. The injunction would not restrain the OAB from the performance of any of its statutory responsibilities. Plaintiffs have already filed their OAB license and permit renewal applications, including the sworn verifications required in the renewal certifications. The injunction would not restrain the OAB in any way from continuing to set and enforce regulatory standards for outdoor advertising signs and to use its substantial authority to prevent unlawful signs from being constructed. Indeed, there is nothing in the proposed injunctive order that would prohibit the OAB, on reflection, from adopting a new Emergency Regulation that establishes a revised revenue neutral fee schedule that can be substantiated. But it would clearly not be in the public interest for the Commonwealth to be permitted to collect what is in all likelihood a patently unconstitutional charge on free expression.

## Conclusion

The issuance of a Preliminary Injunction is the only remedy available that would foreclose irreparable injury in this case. There is nothing in the public record to support the likelihood that the OAB Permanent Fee Schedule is a valid regulatory fee under the First and Fourteenth Amendments. The Defendants, the OAB and the Commonwealth of Massachusetts will not suffer any irreparable injury if a preliminary injunction is entered. Finally, it clearly is not in the public interest to permit the collection of unconstitutional excessive fees, particularly where this Court lacks authority to later require that such illegal fees be repaid to the Plaintiffs.

WHEREFORE, Clear Channel Outdoor, Inc. and Lamar Central Outdoor, Inc. respectfully move that this Court enter the preliminary injunction enjoining the Defendants, pending the final hearing and determination of this action, from imposing and/or collecting any sign permit fee from Plaintiffs in excess of the sign permit fees in effect prior to January 29, 2003.

Respectfully submitted,

Clear Channel Outdoor, Inc. and
Lamar Central Outdoor, Inc., Plaintiffs

By the attorneys,

George A. Berman, BBO# 040200
Marjunette deMagistris, BBO# 648133
PEABODY & ARNOLD, LLP
30 Rowe's Wharf
Boston, MA 02199
(617) 951-4701

Date: June 1, 2004

Of Counsel:

Eric M. Rubin, Esq.
Walter E. Diercks, Esq.
RUBIN, WINSTON, DIERCKS, HARRIS
   & COOKE, LLP
1155 Connecticut Avenue, N.W.
Sixth Floor
Washington, D.C.  20036
(202) 861-0870