original

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-10616 JLT

FILED
IN CLERK'S OFFICE
2004 JUN 28  P 2: 13

U.S. DISTRICT COURT
DISTRICT OF MASS.

| CLEAR CHANNEL OUTDOOR, INC. and LAMAR CENTRAL OUTDOOR, INC., |
|---|
| Plaintiffs, |
| v. |
| PAUL PIETAL, in his official capacity as Chairman of the Outdoor Advertising Board; WILLIAM T. HAYWARD, JR., in his official capacity as Member of the Outdoor Advertising Board; and DAVID VEATOR, in his official capacity as Member of the Outdoor Advertising Board; |
| Defendants. |

### Supplemental Affidavit of Drew Hoffman

Drew Hoffman, on oath deposes and says that he has personal knowledge of the following facts, except those stated on information and belief, and as to those he believes them to be true.

1.  This affidavit supplements the statements made in my Affidavit of May 25, 2004.

2.  Since June, 2003, I have acted as representative of Plaintiffs Lamar and Clear Channel in meetings with representatives of the Commonwealth of Massachusetts concerning the Outdoor Advertising Board's permit and license fees. I retained careful records of the date of each such meeting on my computer. Unfortunately, my computer has been stolen from my office and I am unable to state the exact dates of each meeting. However, I believe that in total, I participated in at least fifteen separate meetings with

state officials regarding this matter during the period June 2003 – March 2004, including multiple meetings with the staff of the Executive Office of the Governor, the Secretary and General Counsel of the Department of Transportation, the Chairman of the Highway Department, and the Executive Director and Counsel to the Outdoor Advertising Board ("OAB").

2.    The meetings I participated in with state officials focused at different times on the legality of the OAB fee schedule, alternative proposals under which the Commonwealth could increase revenues to the general fund from its own outdoor advertising programs, various potential compromises by the parties with respect to the OAB fee schedule and other related matters.

3.    During the course of these negotiations with state officials, there would periodically come a time when a deadline for payment of fees would become pressing. The first such deadline was January 31, 2004, the second was on February 29, 2004. In each instance, the parties agreed that, in order to allow time to continue discussions and to permit broader consultations within the state government, those deadlines would have to be extended. In the course of my discussions, I had indicated that Plaintiffs had prepared a Complaint in August 2003 and were prepared to file it at any time. In fact, I provided drafts of that Complaint to certain officials in the course of my discussions for their information. Accordingly, in order to facilitate continued discussions, as Plaintiffs' representative, I agreed to forbear from filing suit while these discussions continued.

4. On March 30, 2004 Clear Channel and Lamar authorized the filing of a Complaint, in conjunction with a written agreement between the parties for a final extension. The Plaintiffs authorized counsel to make a final settlement proposal which was communicated through counsel on May 3, 2004. When it became clear that the OAB would not consider this final proposal before the June 30, 2004 deadline for payment in full, Plaintiffs authorized the filing of a Motion for Preliminary Injunction.

5. The only reason that Clear Channel delayed the filing of the Complaint in this case and the Motion for Preliminary Injunction as to avert litigation and permit the continuation of discussions with state officials. I cannot perceive any other reason such delay would benefit the Plaintiffs.

6. Clear Channel Outdoor Inc. ("Clear Channel") signs throughout Massachusetts are used on average at least 15% of the time for non-commercial messages, including public interest messages, political messages, charitable messages and other content that does not propose the sale or purchase of a product or service. Non-commercial messages are moved from location to location to maximize exposure and to respond to the non-commercial, speakers specific geographic and demographic requirements. Therefore, although no single sign is typically devoted exclusively to non-commercial purposes, almost every sign in our inventory displays non-commercial messages at some point during the year.

7. Clear Channel typically donates advertising space and the services of its employees to various charitable and public service organizations free of charge. The only expense to the charitable organization for the use of Clear Channel's signs is the cost of printing. The charitable and civil organizations which have sought, and been given

3

access to Clear Channel signs are extremely varied and include such diverse organizations as the Boston Lyric Opera, the Girl Scouts, The Uphams Corner Healthy Boston Coalition, the Massachusetts Society of Eye Physicians and Surgeons, the Boston Public Schools and the Tax Equity Alliance for Massachusetts.

8.  Clear Channel signs are also used for political advertising in which candidates for various public offices, and the sponsors and opponents of ballot issues, purchase space at commercial market rates. Clear Channel signs have been used to promote candidates for public office. Because of its unique ability to target a specific geographic area, outdoor advertising is one of the most cost efficient methods for candidates for local offices to publicize their candidacies.

9.  Clear Channel signs also disseminate noncommercial messages of general public interest. Messages of this nature concern a wide variety of topics and issues in addition to those described above, including:

    (a)    recruiting posters for the United States Navy and Air Force;

    (b)    advertisements for a fundraiser to benefit homeless persons;

    (c)    information about food stamps;

    (d)    advertisements for museum and arts programs;

    (e)    information about designated drivers and the campaign against drunken driving;

    (f)    information regarding childhood immunization programs;

    (g)    advertisements regarding YMCA programs;

    (h)    advertisements for Girl Scouts Cookies;

    (i)    information regarding environmental protection;

  (j)  anti-smoking messages;

  (k)  teen-literacy messages; and

  (l)  AIDS prevention messages

I declare under penalty of perjury this 25th day of June, 2004 that the foregoing is true and correct.

*/s/ W. Drew Hoffman*
Drew Hoffman, President
Massachusetts Division
Clear Channel Outdoor Inc.